UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SINESHA V. KANG,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

Defendant.

No. 2:15-cv-0335 DB

ORDER

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment.[1] For the reasons explained below, plaintiff's motion is granted, defendant's cross-motion is denied, the decision of the Commissioner of Social Security ("Commissioner") is reversed, and the matter is remanded for further proceedings consistent with this order.

PROCEDURAL BACKGROUND

In April of 2012, plaintiff filed an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act") alleging disability beginning on January 1, 2005. (Transcript ("Tr.") at 11, 158-66.) Plaintiff's application was denied initially, (id. at 103-

[1] Both parties have previously consented to Magistrate Judge jurisdiction in this action pursuant to 28 U.S.C. § 636(c). (See Dkt. Nos. 8 & 9.)

07), and upon reconsideration. (Id. at 109-13.)

Thereafter, plaintiff requested a hearing which was held before an Administrative Law Judge ("ALJ") on June 18, 2013. (Id. at 24-62.) Plaintiff was represented by an attorney and testified at the administrative hearing. (Id. at 24-25.) In a decision issued on September 25, 2013, the ALJ found that plaintiff was not disabled. (Id. at 20.) The ALJ entered the following findings:

> 1. The claimant has not engaged in substantial gainful activity since March 28, 2012, the application date (20 CFR 416.971 *et seq*.).
>
> 2. The claimant has the following severe impairments: Depression, schizophrenia, and personality disorder (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is limited to work involving simple instructions, having no more than occasional interaction with the public, coworkers, and supervisors.
>
> 5. The claimant has no past relevant work (20 CFR 416.965).
>
> 6. The claimant was born on August 20, 1987 and was 24 years old, which is defined as a "younger individual age 18-49," on the date the application was filed (20 CFR 416.963).
>
> 7. The claimant has a "limited" education and is able to communicate in English (20 CFR 416.964).
>
> 8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).
>
> 9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).
>
> 10. The claimant has not been under a disability, as defined in the Social Security Act, since March 28, 2012, the date the application was filed (20 CFR 416.920(g)).

(Id. at 13-20.)

/////

On December 10, 2014, the Appeals Council denied plaintiff's request for review of the ALJ's September 25, 2013 decision. (Id. at 1-3.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on February 6, 2015. (Dkt. No. 1.)

## LEGAL STANDARD

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)). If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm." McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity

> to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

APPLICATION

In her pending motion plaintiff asserts the following two principal claims: (1) the ALJ's treatment of the medical opinion evidence constituted error; and (2) the ALJ's treatment of plaintiff's subjective testimony constituted error. (Pl.'s MSJ (Dkt. No. 16) at 16-25.[2])

## I. Medical Opinion Evidence

The weight to be given to medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or nonexamining health professionals. Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant . . . ." Lester, 81 F.3d at 830. This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).

The uncontradicted opinion of a treating or examining physician may be rejected only for clear and convincing reasons, while the opinion of a treating or examining physician that is controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830-31. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." (Id. at 831.) Finally, although a

---

[2] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

treating physician's opinion is generally entitled to significant weight, "'[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)).

**A. Dr. Wendy Weiss**

Here, plaintiff argues that the ALJ erred in rejecting the opinion of Dr. Wendy Weiss, an examining physician. (Pl.'s MSJ (Dkt. No. 17) at 16-22.) In this regard, Dr. Weiss, a psychologist, examined plaintiff on June 15, 2013, and completed a "Psychological Evaluation," and a "Medical Source Statement Concerning the Nature and Severity of an Individual's Mental Impairment."[3] (Tr. at 349-60.) As a result of her examination, Dr. Weiss opined that plaintiff was, essentially, moderately to markedly limited in most of her functional abilities. (Id. at 356-58.)

The ALJ's decision discussed Dr. Weiss' opinion and afforded that opinion "little weight." (Id. at 18.) In support of that determination the ALJ stated that Dr. Weiss' suggested onset date of September 1, 2008 was inconsistent with Dr. Weiss' own narrative report which stated that "by September 2008 the client indicated that medication had helped her feel less depressed and she was able to focus better. In November 2008 she indicated that medication helped her to relax and she felt less agitated with better sleep and less depression." (Id.) In this regard, the ALJ found that the "narrative report suggest that the claimant showed improvement with appropriate treatment starting in 2008 and there is a gap in treatment until early 2012." (Id.)

However, that Dr. Weiss recounted a treatment record noting that in 2008 plaintiff felt "less depressed," "was able to focus better . . . . that medication helped her to relax and she felt less agitated with better sleep and less depression," does not provide a legitimate basis for

[3] The opinions of a medical specialist regarding the specialist's area of expertise "are given more weight than the opinions of a nonspecialist." Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); see also 20 C.F.R. §§ 404.1527(c)(5) & 416.927(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.").

rejecting Dr. Weiss' opinion. In this regard, Dr. Weiss was recounting treatment notes, and those notes simply reflect relative, not absolute, improvement in plaintiff's symptoms.

That a patient becomes less depressed or able to focus better does not mean they are not depressed or unable to focus for purposes of gainful employment. See Hutsell v. Massanari, 259 F.3d 707, 712 (8th Cir. 2001) ("We also believe that the Commissioner erroneously relied too heavily on indications in the medical record that Hutsell was 'doing well,' because doing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to her work-related functional capacity."); Holohan v. Massanari, 246 F.3d 1195, 1205 (9th Cir. 2001) ("That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace."). Moreover, Dr. Weiss' September 1, 2008, onset date is supported by medical records showing that plaintiff had a GAF of 45 in August of 2008.[4] (Id. at 333-34.)

With respect to the ALJ's reference to a gap in plaintiff's treatment, the Ninth Circuit has

> . . . particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because 'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'

Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1299-1300 (9th Cir. 1999) (quoting Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996)); see also Garrison v. Colvin, 759 F.3d 995, 1018 fn 24 (9th Cir. 2014) ("In other words, we do not punish the mentally ill for occasionally going off their medication when the record affords compelling reason to view such departures from prescribed treatment as part of claimants' underlying mental afflictions.").

Moreover:

> Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick

[4] A GAF score represents a present rating of overall psychological functioning on a scale of 0 to 100. See Diagnostic and Statistical Manual of Disorders, at 34 (Am. Psychiatric Ass'n, 4th Ed. 2000) ("DSM-IV"); see also Keyser v. Commissioner Social Sec. Admin., 648 F.3d 721, 723 (9th Cir. 2011) ("A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment."). A GAF score of 45 indicates "serious symptoms (e.g., suicidal ideation . . . ) OR any serious impairment in social, occupational or school functioning . . . ." DSM-IV at 32.

> out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.

Garrison, 759 F.3d at 1017.

**B. Global Assessment of Functioning**

The ALJ also rejected Dr. Weiss' opinion because Dr. Weiss opined that plaintiff's Global Assessment of Functioning or "GAF" was 40, which the ALJ found was "inconsistent with all of the GAF scores assigned" in the previous year, i.e. 2012 to 2013.[5] (Tr. at 18.) Plaintiff, however, had been assessed several prior GAF scores of 50 during that period of time. (Id. at 273, 275, 278.) A GAF score in the range of 41 to 50 denotes: "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM-IV at 34. Moreover, "GAF scores are typically assessed in controlled, clinical settings that may differ from work environments in important respects." Garrison, 759 F.3d at 1003. In this regard, that treatment notes from earlier dates reflected that plaintiff's GAF score was somewhat better than the score Dr. Weiss determined on June 15, 2013, is not a legitimate reason to discredit her opinion.

**C. Plaintiff's Mental Health Records**

The final reason provided by the ALJ for discrediting Dr. Weiss' opinion was that mental health records in 2012 and 2013 "observed behaviors, responses, and attitudes . . . of a person able to respond, interact, and doing fairly well" in contrast to the "nonresponsive uncooperative attitude of the claimant displayed toward Dr. Weiss." (Tr. at 19.) As noted above, however, plaintiff's mental health records reflect that during 2012 and 2013, plaintiff was experiencing serious symptoms. Moreover, plaintiff's mental health records from that period reflect that plaintiff was "uncooperative, resistant . . . . irritable," experienced auditory and visual

[5] A GAF score represents a present rating of overall psychological functioning on a scale of 0 to 100. See Diagnostic and Statistical Manual of Disorders, at 34 (Am. Psychiatric Ass'n, 4th Ed. 2000) ("DSM–IV"); see also Keyser v. Commissioner Social Sec. Admin., 648 F.3d 721, 723 (9th Cir. 2011). ("A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment.").

hallucinations, "+paranoia," restricted affect, "poor eye contact," sluggish motor activity, with "thoughts that people want to hurt her and are following her." (Tr. at 273, 282, 283, 304, 311.

In this regard, the court finds that the ALJ failed to offer specific and legitimate reasons supported by substantial evidence for rejecting Dr. Weiss' opinion. Moreover, the court finds that the ALJ's error was not harmless, as Dr. Weiss opined that plaintiff's residual functional capacity was significantly more limited than the residual functional capacity determined by the ALJ.

Accordingly, plaintiff is entitled to summary judgment on her claim that the ALJ's treatment of the medical opinion evidence constituted error.

## II. Subjective Testimony

Plaintiff argues that the ALJ's treatment of plaintiff's testimony constituted error. (Pl.'s MSJ (Dkt. No. 17) at 22-25.) The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so . . . .

Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted). "The clear and convincing standard is the most demanding required in Social Security cases." Moore v. Commissioner of Social Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking . . . ." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

////

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id.

Here, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms was not entirely credible. (Tr. at 16.) Specifically, the ALJ stated that plaintiff's treatment records "suggest . . . fairly mild symptoms . . . declining counseling and instead opting to be treated only with medications." (Id.)

As noted above, plaintiff's treatment records do not suggest fairly mild symptoms. To the contrary, those treatment records suggest that plaintiff was experiencing serious symptoms, possibly even when evaluated under optimal conditions. Also as noted above, it is a mistake to criticize "a lack of treatment to reject mental complaints . . . ."[6] Regennitter, 166 F.3d at 1299.

Accordingly, the court finds that plaintiff is also entitled to summarize judgment with respect to her claim that the ALJ's treatment of plaintiff's subjective testimony constituted error.

CONCLUSION

With error established, the court has the discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

---

[6] Moreover, the medications the ALJ referred to included Trazadone, Prozac, Remeron, and Risperdal. (Tr. at 279, 303, 311.)

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison, 759 F.3d at 1020. Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin.,, 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, the court cannot say that further administrative proceedings would serve no useful purpose. This action will, therefore, be remanded for further proceedings consistent with this order.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Dkt. No. 17) is granted;
2. Defendant's cross-motion for summary judgment (Dkt. No. 18) is denied;
3. The Commissioner's decision is reversed; and
4. This matter is remanded for further proceedings consistent with this order.

Dated: January 11, 2017

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DLB1\orders.soc sec\kang0335.ord